Charles Ray BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 445–84.

Court of Criminal Appeals of Texas, En Banc.

Feb. 26, 1986.

Arch C. McColl, III, S. Michael McColloch, David W. Coody, Dallas, for appellant.

Henry Wade, Dist. Atty. and Gregg Long, Jeff Hines, and Theodore Beach, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant, though separately indicted, was jointly tried with co-defendant Charles Ray Calahan and was found guilty of aggravated robbery by the jury, who assessed appellant's punishment at 80 years' imprisonment and a fine of $5,000.00.

On appeal the Dallas Court of Appeals reversed and remanded the cause, finding the trial court erred in failing to apply the law of parties to the facts in its charge as urged by the appellant in his fourth ground of error. The court further found the evidence was sufficient for the jury to conclude that the robbery was committed by the use of a knife, a deadly weapon. The Court of Appeals also concluded that a deferred adjudication order placing appellant on "probation" was admissible at the penalty stage of the trial under Article 42.12, § 3d(c), V.A.C.C.P. See *Brown v. State*, 668 S.W.2d 470 (Tex.App.—Dallas 1984). Justice Stephens agreed with the reversal based on the court's charge, but dissented to the court's action on the other two contentions.

We granted the State's petition for discretionary review to consider the correctness of the Court of Appeals' ruling on the charge to the jury. We also granted appellant's petition for discretionary review to determine the correctness of the rulings that the evidence was sufficient to show the knife was a deadly weapon and the admissibility of the deferred adjudication order.

The facts here become important. Tom Meyer, age 20, related that late in the evening of July 23, 1982, he was seated on the hood of his car in the parking lot of the Debonair Danceland nightclub in Dallas County. He and his girlfriend had just had an argument, had ended their relationship, and she had reentered the club. While drinking a beer and smoking a cigarette, Meyer was approached by three black men, the tallest of whom asked for a light. Meyer handed the man his cigarette. When the cigarette was returned, the man sat down next to Meyer and placed a knife in Meyer's left side telling him not to move. One of the shorter men then placed a knife to Meyer's right side, while the other shorter man held a gun to his side as well. The taller man told Meyer to be "cool" and took his wallet and car keys while the weapons were held on him. The two shorter men then escorted Meyer to the passenger side of his automobile where he got in the front seat. The two shorter men got in the back. The one in the back on the right side held a knife to Meyer's side while the other man in the rear seat held a gun to the back of Meyer's head. The taller man drove the car for several miles until they reached an underpass, where the driver got out. On direct examination Meyer testified:

"Q This is the tall guy now?

"A Yes, and he told Little Pete, one of them in the back, to drive, to go up to

the turn and turn around and come back and stop, and we did.

"He got in and the one on the right side kept a knife to my side, and another one got in the driver's seat and drove up, and we turned around and came back under the underpass and stopped in the median, a grass median.

"Q Where was the tall guy at this time?

"A He is standing in the median.

"Q So, he had just gone a half a block or so without him?

"A Yes.

"Q And came right back to where he was?

"A Yes.

\*   \*   \*   \*   \*   \*

"A The original driver walked around to my side and opened the door. The guy in back unlocked the door. He opened the door and grabbed me and pulled me out, and then the other two got out, and *all three of them* took me over under the underpass, told me to lay face down first with my hand behind my back." (Emphasis supplied.)

Meyer was "hog tied" with rope with his hands and feet tied behind his back and a rope around his neck, so that when he struggled the rope would tighten. The rope was tightened around his neck and he lost consciousness. When Meyer awoke, the three men had driven off in his car. He finally struggled and freed himself. Some teenagers picked him up and took him to a police station where he reported what had happened.

In the early morning hours of July 27, 1982, appellant Brown and Guss Ross (later identified as the taller man) were arrested in the possession of Meyer's car.

Appellant's extrajudicial confession was introduced which showed he was with Ross and "Little Pete" (shown to be co-defendant Calahan) on the evening in question, that " 'Little Pete' put his knife on the white dude when we walked up on him," that Ross drove the car to a place where appellant got some rope and "we all tied

the white dude up" and "the white dude gave 'Little Pete' and Ross his money."

After the car was recovered, Meyer and his father went to the police pound to claim the car, and found a pistol and a knife in the car which had not been there before the alleged robbery.

Meyer testified it was dark and he could not identify any of the three men who robbed him. He did state that appellant and co-defendant Calahan were the same height as the two shorter men, who later sat in the back of the car.

Co-defendant Calahan's extrajudicial confession was introduced in which he sought to cast the appellant as the primary actor in the robbery. His confession can only be used against him, and cannot be considered against the appellant.

We do know from the State's evidence that the taller man involved in the robbery was Ross, that the shorter man in the rear seat with a gun, and who later turned the car around at the underpass, was "Little Pete," the co-defendant. Thus, the other man who placed the second knife to Meyer's side while he sat on the car hood, and who continued to hold the knife on him in the car, was the appellant.

V.T.C.A., Penal Code, § 7.01, provides:

"(a) A person is criminally responsible as a party to an offense if the offense is committed by *his own conduct,* by the *conduct of another* for which he is criminally responsible, *or by both.*

"(b) Each party to an offense may be charged with commission of the offense.

"(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice." (Emphasis added.)

V.T.C.A., Penal Code, § 7.02, provides in part:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

"(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

"(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

"This section establishes four tests under which a person may be convicted of an offense committed by another because of complicity in the commission of the offense." Practice Commentary to § 7.02, Searcy and Patterson.

It was the State's theory of the prosecution that the appellant was criminally responsible for the commission of the aggravated robbery as charged by his own conduct, and if not, certainly by the conduct of another, or by both his own conduct and the conduct of another. See V.T.C.A., Penal Code, § 7.01(a); 18 Tex.Jur.3rd, Criminal Law, § 146, p. 206; McCormick and Blackwell, Texas Practice, Texas Criminal Forms and Trial Manual, § 84.01, p. 301.

The trial court instructed the jury abstractly on the law of parties. See V.T. C.A., Penal Code, §§ 7.01(b) and 7.02(a)(2). In another part of the charge to the jury the court gave the following instruction:

"Now if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of July, 1982, in Dallas County, Texas, the defendant, Charles Ray Brown, *either acting alone or as a party*, did unlawfully, then and there while in the course of committing theft and with intent to obtain or maintain control of the property of Tom Meyer, hereinafter called complainant, the said property being current money of the United States of America, without the effective consent of the said complainant and with intent to deprive the said complainant of said property, did then and there by using and exhibiting a deadly weapon, to-wit: a knife, knowingly and intentionally threaten and place the said complainant in fear of imminent bodily injury, then you will find the defendant guilty of aggravated robbery.

"If you do not so believe or you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'not guilty.' " (Emphasis supplied.)

The appellant orally objected to the court's charge:

"We would also object to the court's charge, Your Honor, on the grounds that it fails to apply specifically the law of parties to the facts in this case.

"We would further object to the court's charge because it does contain the law of parties and we further...."

After several other oral objections, the court overruled all objections. The co-defendant Calahan then adopted all of appellant's objections to the charge.

It would appear that appellant did not desire a charge on the law of parties at all, but his other general objection did not specifically point out to the court in what respect the court had failed to specifically apply the law of parties to the facts. This is not a case where the court charged only on the abstract law of parties with no charge applying the law of the parties to the facts. Here the court did apply the law of parties to the facts. See *Minor v. State*, 476 S.W.2d 694, 696 (Tex.Cr.App.1972).

Article 36.14, V.A.C.C.P., expressly provides the defendant shall present his objection "distinctly specifying each ground of

objection." See also 33 Tex.Jur.3rd, Crim. Law, § 2755, p. 417. The purpose of Articles 36.14 and 36.15 (Requested Special Charges) is to enable a trial judge to know in what respect a defendant regards the charge as defective and to afford him an opportunity to correct it before reading the charge to the jury. *Seefurth v. State*, 422 S.W.2d 931, 936 (Tex.Cr.App.1967), and cases there cited. "These articles serve a salutary purpose in preventing the trial judge from being 'sand-bagged' and in preventing unnecessary reversals." *Seefurth* at p. 931. This can be accomplished only when the objections are sufficiently specific to point out the errors of which complaint is made. *Green v. State*, 144 Tex.Cr.R. 186, 161 S.W.2d 114 (Tex.Cr.App.1942); *McCain v. State*, 143 Tex.Cr.R. 521, 158 S.W.2d 796 (Tex.Cr.App.1942).

Thus an objection which does not distinctly specify and point out wherein the charge is defective, presents nothing for review. *Myers v. State*, 468 S.W.2d 847 (Tex.Cr.App.1971); *Smith v. State*, 439 S.W.2d 834 (Tex.Cr.App.1969); *Siros v. State*, 399 S.W.2d 547 (Tex.Cr.App.1966); *Green v. State*, supra. See also *Dozier v. State*, 143 Tex.Cr.R. 397, 158 S.W.2d 776 (Tex.Cr.App.1942).

And it has also been said that an objection to the charge which is too general to call the court's attention to the defect or omission and which does not point out where the charge did not correctly set forth the law presents nothing for review. *Chavira v. State*, 167 Tex.Cr.R. 197, 319 S.W.2d 115 (Tex.Cr.App.1958); *Bryant v. State*, 163 Tex.Cr.R. 463, 293 S.W.2d 646 (Tex.Cr.App.1956); *Soto v. State*, 161 Tex. Cr.R. 239, 275 S.W.2d 812 (Tex.Cr.App. 1955). *Maloney v. State*, 45 S.W.2d 216 (Tex.Cr.App.1932), held that the objection was too general to call the court's attention to the omission complained of, that the mere presence at the scene would not constitute defendant a principal.

In *Cain v. State*, 136 Tex.Cr.R. 275, 124 S.W.2d 991 (Tex.Cr.App.1939) (Opinion on Rehearing), the objection "that nowhere in said charge has the court charged on the definition of the laws of principals, applying the law to the facts on principals, and charged on the converse of said application of the law to the facts" was held insufficient to call the court's attention to the contradiction between the charge on principals and the charge on alibi.

In *Bilbrey v. State*, 594 S.W.2d 754, 756 (Tex.Cr.App.1980), the objection was that the charge failed to adequately apply the law to the facts. There it was held the objection was not specific enough to apprise the court of what was complained of and presented nothing for review.

In determining whether the law has been properly applied to the facts the charge must read as a whole. In applying the law to the facts reference may properly be made to an abstract instruction on the law in another part of the charge. If there is a defect in the abstract portion of the charge and reference elsewhere is made thereto there may be error in the application of the law to the facts. See *Alvarado v. State*, 704 S.W.2d 36 (Tex.Cr.App.1985). In the instant case the appellant by his objection did not distinctly specify whether there was error in the abstract portion of the charge, or whether in applying the law of parties to the facts the court should have required the jury to first find Guss Ross was the primary actor and make appellant's guilt dependent upon whether he was a "party," or whether it should have submitted the question of whether the co-defendant Calahan was the primary actor, or whether both Ross and Calahan were primary actors, etc.[1] The objection did not point out any defect in form, or urge the wrong test under § 7.02 had been used or anything of this nature. The general objection simply did not give an opportunity to the trial court to correct any defect. It did not tell

---

1. It is noted that the co-defendant Calahan made the same objection to the charge at the joint trial. If it can be argued that the objection

was sufficient, how should the court have responded in each of the separate charges given to the same jury?

the trial court in what respect he regarded the charge defective. Further, if the objection can be regarded as sufficient, it gives the appellant on appeal a chance to claim the objection meant many different things never revealed to the trial judge. Interestingly enough on appeal the appellant in his fourth ground of error before the Court of Appeals still fails to clearly point out the defect in the court's charge. He argues the evidence is not sufficient to show he committed the offense acting alone, and there were "two other actors with appellant," but does not analyze how the trial court should have responded to his objection.

In *McCuin v. State*, 505 S.W.2d 827 (Tex. Cr.App.1974), the test for ascertaining whether a person is a party to an offense by virtue of his own conduct or by the conduct of another for which he is criminally responsible was discussed:

"[T]he trial court should first remove from consideration the acts and conduct of the non-defendant [or co-defendant] actor[s]. Then, if the evidence of the conduct of the defendant then on trial would be sufficient, in and of itself, to sustain the conviction, no submission of the law of principals [parties] is required.... On the other hand, if the evidence introduced upon the trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals [parties] and is dependent, at least in part, upon the conduct of another. In such a case, the law of principals [parties] must be submitted and made applicable to the facts of the case."

The *McCuin* test is still a viable means for determining when a cause should be submitted to the jury on the law of parties. It is also clear from *McCuin* when no submission of the law of parties is required. When a jury charge on parties is necessitated by the evidence, the charge may take various forms depending upon the evidence as the form books indicate. These submissions are not always given without difficul-

ty. See generally Foreman and Jones, Submitting Law of Parties in a Texas Criminal Prosecution, 33 Baylor Law Review 267. And this is also true where an issue is raised by the evidence whether the defendant is criminally responsible for the commission of the offense by his own conduct, or by the conduct of another, or by both.

In Foreman and Jones, supra, it is written:

"It is not unusual for a charge to apply the law of parties to the facts by an instruction allowing the jury to convict on finding that defendant, either alone or acting as a party with another person, did the act charged [citing Morrison and Blackwell, New Penal Code Forms, C–7.01 at 100–01]. An instruction of that kind is permissible if the evidence raises both the theory that the defendant did the act charged and the theory that another person participated with defendant in doing that act."

*Gilmore v. State*, 666 S.W.2d 136, 157 (Tex.App.—Amarillo 1983) (Discretionary Review Refused—Jan. 25, 1984), held that the evidence supported the following charge:

"... if you believe from the evidence beyond a reasonable doubt that on or about the 6th day of November, 1980 ... Vernon Ray Gilmore, *either acting alone or with another as a party to the offense* ... did then and there knowingly cause the death of ... Richard Grier Luster ... you will find the defendant guilty of the offense of murder.... [emphasis added]"

The *Gilmore* court then wrote:

"Since we have concluded that the evidence raised the issue of appellant's criminal responsibility with Samantha Davidson, it follows that the above stated charge properly applied the law of parties to the facts of the case...." (Emphasis added.)

See *Minor v. State*, supra; *Rivas v. State*, 496 S.W.2d 600, 602 (Tex.Cr.App.1973).

In McClung, "Jury Charges For Texas Criminal Practice" (Rev.Ed.1985), p. 10, it is written:

"(2) where the issue is raised or there is a question or dispute as to whose activity caused the specific result, such as who fired the shot, or whose shot hit deceased or whose blow or kick hit the victim in the head and caused serious bodily injury then the charge should incorporate a phrase or clause to take care of such situation:

"(After giving the law of parties, as in the first paragraph of (1) next preceding, which starts with 'Each party to an offense,' follow with this as the second paragraph:

" 'Now, if you find from the evidence beyond a reasonable doubt that on or about the        day of    , 19   , in        County, Texas, the defendant, Y, *either acting alone or with (or 'another')* *as a party to the offense*, as that term is hereinbefore defined, did intentionally or knowingly (cause serious bodily to D by beating him with his fists and kicking him with his feet), then you will find the defendant guilty of aggravated assault.' " (Emphasis added.)

See also McCormick and Blackwell, Texas Practice, Texas Criminal Forms and Trial Manual, § 84.01, pp. 301–302; Branch's 3rd Ed., Texas Anno.Penal Statutes, Vol. 1, § 7.02, p. 257, form 2.

In view of the evidence in the instant case, it appears that the trial court attempted to charge as approved in *Gilmore* and suggested by *McClung*, although the charge is clearly no model.

We conclude that the objection failed to distinctly specify or point out any defect in the charge and did not comply with Article 36.14, V.A.C.C.P. We are aware of *Govan v. State*, 682 S.W.2d 567 (Tex.Cr.App.1985), holding an objection such as the instant one to be sufficient to preserve error, but *Govan* appears to be an aberration, and is overruled to the extent of any conflict.

*Jaycon v. State*, 651 S.W.2d 803 (Tex.Cr. App.1983), relied upon by the Court of Appeals, is clearly distinguishable. In that murder case the State's theory of prosecution was that co-defendant Herndon was the primary actor who shot and killed the deceased Young, and that the defendant Jaycon, who was not even present at the time of the shooting, was guilty only as a party dependent upon the conduct of Herndon. The trial court charged much as the trial court in the instant case. In *Jaycon*, however, the defendant not only objected to the failure to make a proper application of the law to the "facts of this case," but also specially requested a charge.[2] That requested charge would have required the jurors to find beyond a reasonable doubt that Herndon caused the death of Young by shooting him with a gun and that Jaycon encouraged, directed, aided or attempted to aid Herndon in shooting Young before they could find Jaycon guilty of murder as charged in the indictment.

In *Jaycon* no evidence supported the submission of the case on the theory that Jaycon was the primary actor. In that situation the reference in applying the law of parties to the fact "acting alone or with another or others as a party to the offense" was not sufficient to require the jury to find whether Herndon caused Young's death by shooting him with a gun and whether Jaycon was criminally responsible for those acts of Herndon.

The instant case, unlike *Jaycon*, presented a fact issue of whether appellant Brown was a primary actor or guilty as a party dependent upon the conduct of another. Further, by objection and a special requested charge Jaycon made his position as to the charge clear. Appellant did not.

The Court of Appeals' reliance on *Jaycon* alone was misplaced.

■ Even if it can be argued that appellant's objection to the charge was sufficient, *Govan v. State*, 682 S.W.2d 567 (Tex.

**2.** An objection and a special requested charge are not both required to preserve error. Article

36.14, V.A.C.C.P.

Cr.App.1985), any error in charging on the law of parties is harmless if the evidence clearly supports appellant's guilt as a primary actor. *Govan v. State,* supra; *Todd v. State,* 601 S.W.2d 718, 721 (Tex.Cr.App. 1980).

In *Rodriquez v. State,* 653 S.W.2d 331 (Tex.App.—San Antonio 1983) (Discretionary Review Refused 1983), the court wrote:

"The fourth and fifth grounds of error allege error in the trial court's submission of an instruction on the law of parties. Tex.Penal Code Ann., Secs. 7.02, 7.03 (Vernon 1974). Based on *Todd v. State,* 601 S.W.2d 718, 721 (Tex.Cr.App. 1980), any error that may have occurred, however, was harmless in that the trial court made appellant's guilt depend on a finding that he committed the offense 'either acting alone or together with another as a person....' As the evidence of appellant's conduct alone was sufficient to sustain the conviction, no charge on parties was required. *McCuin v. State,* 505 S.W.2d 827 (Tex.Cr.App.1974). Appellant's fourth and fifth grounds of error are overruled."

Appellant's conduct alone is sufficient to sustain the conviction, and the claimed error in the charge, if any, is harmless. The Court of Appeals erred in reversing the conviction based on an error in the charge.

In appellant's petition for discretionary review he challenges the sufficiency of the evidence to show the knife used during the alleged robbery was a deadly weapon as alleged in the indictment.

V.T.C.A., Penal Code, § 1.07(a)(11), defines "deadly weapon" as

"(A) a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

A knife is not a deadly weapon per se. *Blain v. State,* 647 S.W.2d 293, 294 (Tex. Cr.App.1983). The State must prove the knife alleged is capable of causing serious bodily injury or death in the manner of its use *or intended use.* (Emphasis supplied.) See V.T.C.A., Penal Code, § 1.07(a)(11)(B).

The jury was instructed in accordance with § 1.07(a)(11)(B).

This Court has held that the State can, without expert testimony, prove a particular knife to be a deadly weapon by showing its size, shape and sharpness, the manner of its use, or intended use and its capacity to produce death or serious bodily injury. *Morales v. State,* 633 S.W.2d 866, 868 (Tex. Cr.App.1982); *Davidson v. State,* 602 S.W.2d 272, 273 (Tex.Cr.App.1980); *Blain v. State,* supra, at 294; *Denham v. State,* 574 S.W.2d 129, 130 (Tex.Cr.App.1978); *Alvarez v. State,* 566 S.W.2d 612 (Tex.Cr.App. 1978). More recently it has been held that physical proximity of the parties is a factor in determining whether a knife is a deadly weapon. See *Tisdale v. State,* 686 S.W.2d 110, 115 (Tex.Cr.App.1984) (Opinion on State's Motion for Rehearing).

In holding that the evidence was sufficient to show the knife was a deadly weapon, the Court of Appeals relied upon *Denham v. State,* 574 S.W.2d 129 (Tex.Cr. App.1978), for the proposition that wounds need not be inflicted before a knife can be determined to be deadly; on *Williams v. State,* 575 S.W.2d 30 (Tex.Cr.App.1979), for the proposition that words spoken by the assailant, such as threats, may be considered in determining the knife's deadly character; on *Herbert v. State,* 631 S.W.2d 585 (Tex.App.—El Paso 1982, no pet.), for the proposition that the distance between the assailant and the victim is a critical evidentiary factor; and on *English v. State,* 647 S.W.2d 667, 668–669 (Tex.Cr. App.1983), for the proposition that expert testimony is not necessary as lay testimony will suffice in most instances, and for the proposition that although admission of descriptions of the knife by witnesses and introduction of the knife into evidence are an aid to the jury in its determination of the knife's deadly character, evidence has been held sufficient where no knife was introduced or clearly seen by the witnesses. The Court of Appeals also relied upon *Eng-*

lish at p. 669 for the proposition that each case must be examined on its own facts to determine "whether the manner of the weapon use and intended use was such as to allow the jury to infer that the weapon was deadly."

Meyer, the complainant, testified he was seated on the hood of his car in the parking lot of a Dallas nightclub when he was approached by three men. The taller one (later shown to be Ross) asked for a light and stuck a knife in Meyer's left side and told him not to move. Then one of two shorter men stuck a knife in Meyer's right side. Meyer stated it was placed about five inches above his waistline. The record then reflects:

"Q Can you describe to the jury what exactly you did feel?

"A Well, I felt the two knives in my side, and it felt like they were fixing to go into my skin, and they told me not to move, and I said 'No problem, I ain't moving....

"Q ... Those two knives that you felt on either side of you, the way they were being used, could they have caused you death or serious bodily injury?

"Q Yes, they could."

A gun was then placed to Meyer's side by the other shorter man. He was ordered into the car and his wallet and keys were taken. Meyer got in the front passenger seat. The two shorter men got in the back seat. One had the gun and grabbed his shirt and pulled him back against the seat. Meyer stated the "other one in the back seat stuck the knife between the seat and door and put it to my side ... he had it poked into me" and it "hurt." The men told him not to move and he wouldn't get "hurt." Meyer testified he was scared.[3]

After driving some distance, Ross (the taller man) got out at an underpass and told "Little Pete" (shown to be co-defendant Calahan) to turn the car around and come back to the underpass. Meyer testified "Little Pete" got in the driver's seat

"and the one on the right side (in the back seat) *kept* a knife to my side." (Emphasis supplied.) This testimony placed appellant as the man with the knife in the back seat. Meyer then related all three took him to the underpass and ordered him to lay down face first. He explained he thought "they were going to kill me."

Appellant and Ross were arrested the next day in possession of Meyer's car. When Meyer and his father recovered the car from the police pound, a pistol and a knife with a four inch blade were found in the back seat. They had not been there prior to the robbery. Meyer stated the knife was "similar to" the one used during the robbery. The knife and pistol were introduced into evidence.

In viewing the sufficiency of the evidence on appeal, the evidence must be viewed in the light most favorable to the jury's verdict. In overruling appellant's ground of error, the Court of Appeals wrote:

"The jury could believe from this circumstantial evidence that this knife was one of those used in the robbery. They were therefore entitled, from the knife and considering the circumstances surrounding its use, to conclude that the knife used was a deadly weapon as alleged in the indictment."

We agree. Any rational trier of the facts could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1974). See *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr. App.1983); *Freeman v. State,* 654 S.W.2d 450 (Tex.Cr.App.1983); *Denby v. State,* 654 S.W.2d 457 (Tex.Cr.App.1983); *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983).

In another ground of review appellant contends the Court of Appeals erred in upholding the admission into evidence of an order of deferred adjudication of guilt.

---

**3.** This Court has held that language such as "you won't get hurt if you cooperate" constitutes an implied threat of death or serious bodily injury when coupled with the use of a knife. *Berry v. State,* 579 S.W.2d 487 (Tex.Cr.App.1979).

At the penalty stage of the instant aggravated robbery trial the State offered an order of deferred adjudication of guilt showing appellant had plead guilty to burglary of a building on February 17, 1982, some five months before the instant offense, and was placed on "probation." Article 42.12, § 3d, V.A.C.C.P. There was no showing of revocation of probation or an adjudication of guilt. The appellant objected to the introduction of the order on the grounds there was no final conviction. The objection was overruled.

Appellant relies on Article 37.07, § 3(a), V.A.C.C.P., and *Baehr v. State,* 615 S.W.2d 713 (Tex.Cr.App.1981), that the order was inadmissible.

Article 37.07, § 3(a), supra, provides:

"Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilt.

"(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The *term prior criminal record means* a final conviction in a court of record, or *a probated* or suspended *sentence* that has occurred prior to trial, or any final conviction material to the offense charged." (Emphasis supplied.)

In *Baehr* this Court held that a deferred adjudication order, a motion to revoke probation or an order revoking probation should not be admitted into evidence over valid objection in view of Article 37.07, § 3(a), as it is not part of a "prior criminal record." The Court of Appeals recognized *Baehr* but observed it did not address the effect of Article 42.12, § 3d(c), on the admissibility of an order of deferred adjudication.[4]

In 1975 the Legislature enacted a procedure for deferred adjudication of guilt and it was codified and plopped down among the provisions of the Adult Probation Law (Article 42.12, V.A.C.C.P.). See Acts 1975, 64th Leg., p. 572, ch. 231 (S.B. 382), effective September 1, 1985.

Said S.B. 382 provided:

"Section 1. Article 42.12, Code of Criminal Procedure, 1965, as amended, is amended by adding Section 3d to read as follows:

" 'Sec. 3d. (a) When in its opinion the best interest of society and the defendant will be served, the court may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on probation on reasonable terms and conditions as the court may require and for a period as the court may prescribe not to exceed 10 years. However, upon written motion of the defendant requesting final adjudication filed within 30 days after entering such plea and the deferment of adjudication, the court shall proceed to final adjudication as in all other cases.

" '(b) On violation of a condition of probation imposed under Subsection (a) of this section, the defendant may be arrested and detained as provided in Section 8 of this Article. The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilty on the original charge. No appeal may be taken from this determination. After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of probation, and defendant's appeal continue as if the adjudication of guilt had not been deferred.

" '(c) On expiration of a probationary period imposed under Subsection (a) of this section, if the court has not proceeded to adjudication of guilt, the court shall dismiss the proceedings against the de-

---

**4.** *Elder v. State,* 677 S.W.2d 538 (Tex.Cr.App. 1984), held that an order revoking probation is a "prior criminal record" within the meaning of

Article 37.07, supra, thus eroding *Baehr* to the extent of the conflict.

fendant and discharge him. The court may dismiss the proceedings and discharge the defendant prior to the expiration of the term of probation if in its opinion the best interest of society and the defendant will be served. A dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense, *except that upon conviction of a subsequent offense, the fact that the defendant had previously received probation shall be admissible before the court or jury to be considered on the issue of penalty.'"* (Emphasis supplied.)

It is observed that the deferred adjudication procedure is referred to as "probation" though it differs from adult probation as originally provided for in Article 42.12, supra, which is now frequently referred to as "regular probation." See *McNew v. State,* 608 S.W.2d 166 (Tex.Cr.App.1978); *Ex parte Shillings,* 641 S.W.2d 538 (Tex.Cr. App.1982).

*Verrett v. State,* 648 S.W.2d 712 (Tex. App.—Beaumont 1982), pet. ref'd, 646 S.W.2d 448 (Tex.Cr.App.1983), held that under § 3d(c) of Article 42.12, supra, the deferred adjudication order was admissible. The Court of Appeals in the instant case followed *Verrett,* though it observed that the appellant, unlike Verrett, was "still serving out his probation [deferred adjudication] at the time of this trial."

There can be little question if a defendant's "probation" is revoked and the court proceeds to an adjudication of guilt under the procedure outlined in § 3d, and the ensuing conviction becomes final, that such conviction may be introduced at the penalty stage of a subsequent trial for another offense as part of the defendant's "prior criminal record." See Article 37.07, § 3(a), supra.

The Court of Appeals in the instant case reasoned that under Article 42.12, § 3d(c), supra, an order of deferred adjudication is admissible at a subsequent trial even if the defendant has successfully completed probation, thus "there is even better reason for a deferred adjudication order to be admissible where probation is still being served." We agree. It would be illogical to say that an order of deferred adjudication is admissible even if the defendant successfully completes "probation," but not if he is still serving his "probation" under the deferred adjudication procedure.

Further, a "probated sentence" [5] is expressly admissible as part of the "prior criminal record" under Article 37.07, § 3a, supra. Thus, a "pending" probation of the regular variety is clearly admissible. Even if it can be validly argued that the term "probated sentence" does not include an order of deferred adjudication, the consistency of the legislative intent in both statutes is evident.

Statutes that deal with the same general subject, have the same common or general purpose, or relate to the same person or thing or class of persons or things are considered in pari materia, though they contained no reference to one another, and though they were passed at different times or at different sessions of the Legislature. 53 Tex.Jur.2d, Statutes, § 186, p. 280; 82 C.J.S., Statutes, § 366a; C. Dallas Sands, Sutherland Statutory Construction, Vol. 2A, § 51.03, p. 298, and Supplement, p. 28 (1973).

Statutes in pari materia are to be taken, read and construed together, and effort should be made to harmonize, if possible so they can stand together and have concurrent efficacy. See 53 Tex.Jur.2d, Statutes, § 186, p. 280. In such situations the special statute governs the general in the event of any conflict. *Alejos v. State,* 555 S.W.2d 444, 449 (Tex.Cr.App.1977).

---

5. The term "probated sentence" is commonly used to denote probation although ordinarily in cases of regular probation the imposition of the sentence is suspended. Article 42.12, § 1, V.A. C.C.P. Thus, there is no sentence in such cases.

"Shock" probation is an exception because there sentence has been imposed prior to the granting of the "shock" probation. In such cases it is the execution of the sentence that is then suspended. See Article 42.12, § 3e(a), V.A.C.C.P.

Article 37.07 and Article 42.12, § 3d(c), V.A.C.C.P., both relate to the admissibility of evidence at the penalty stage of a bifurcated trial. They are in pari materia. When the statutory rule of construction is applied, it is clear that it is the legislative intent that a pending order of deferred adjudication is admissible at the penalty stage of a bifurcated trial. Appellant's ground of review is overruled.[6] To the extent of any conflict, *Baehr* is overruled. See also *Elder v. State*, supra. While the Court of Appeals reached the correct result regarding the appellant's grounds of review, it erred in finding the trial court failed to respond to the objection to the court's charge on the law of parties. The judgment of the Court of Appeals is reversed, and the cause is remanded for consideration of appellant's remaining grounds of error.

CLINTON and TEAGUE, JJ., dissent.

CAMPBELL, Judge, concurring and dissenting.

In *Govan v. State*, 682 S.W.2d 567 (Tex. Cr.App.1985) all but the writer of today's majority opinion agreed that the objection made by the defendant to the jury charge was sufficient to apprise the trial court of the complained of error. Today, Presiding Judge Onion, with no recognizable changes, converts his lone dissent in *Govan*, supra, into this Court's majority opinion and dismisses the holding in *Govan* as "an aberration." Since when is an opinion agreed upon *by all members of this Court*, save one, "an aberration?"

The majority, while acknowledging that the Texas Code of Criminal Procedure no longer requires defense counsel to file written exceptions to the jury charge or specially requested charges, nonetheless, implicitly requires the same before an objection will be deemed sufficient. In distinguish-

ing *Jaycon v. State*, 651 S.W.2d 803 (Tex. Cr.App.1983) from the instant case, the majority points to the *requested charge* in *Jaycon*, supra. The significance in *Jaycon*, ignored by the majority in this case, is that the verbal objection is virtually identical to the objection in *Govan*. Thus I construe the majority's definition of a specific objection to be a verbal objection coupled with a specially requested charge. This, of course, is not the law, as even the majority concedes. See Maj. opinion, p. 945, n. 2.

In my view, an objection which states: "We would object to the court's charge, Your Honor, on the grounds that it fails to apply *specifically* [emphasis mine] the law of parties to the facts in this case," as was voiced in the instant case and in *Govan*, adequately apprises the trial judge of the complained of error in the charge. Unless we are to assume that trial judges across this State are buffoons, unschooled in the law and incapable of understanding common language, this objection is sufficient. A trial judge, having heard this objection, is (1) referred to the "application paragraph" of the charge, and (2) referred to that portion of the "application paragraph" which applies the *law of parties* [emphasis mine] to the facts of the case. If we assume that the trial judge listened to the evidence presented at trial, and understands the law of parties, he can clearly read the charge and determine if it is proper.

The same degree of deference that should be accorded the trial judges of this State cannot be accorded lay juries, and therein lies the fatal flaw in the majority opinion, for there was no road map for the jury to follow in this case.

The majority correctly points out that the trial court in the instant case properly charged the jury abstractly on the law of parties pursuant to V.T.C.A.Penal Code, Secs. 7.01(b) and 7.02(a)(2). Subsequently,

---

6. *Tripplett v. State*, 686 S.W.2d 342 (Tex.App.— Houston [1st] 1985), held that a pending order of deferred adjudication was inadmissible, rejecting the decision by the Dallas Court of Appeals in the instant case, *Brown v. State*, 668 S.W.2d 470 (Tex.App.—Dallas 1984). *Tripplett*

concluded the "error" was not reversible error because essentially the same evidence was introduced from another source without objection. While reaching the right result, *Tripplett's* reasoning is rejected by today's decision.

"in another part of the charge to the jury" [the portion that I irreverently refer to as the "application paragraph"] the court charged the jury, inter alia, that:

"... the defendant, Charles Ray Brown, either acting alone or as a party, [emphasis in majority] did unlawfully ..."

The portion underscored represents the only reference to the "law of parties" in the application paragraph of the charge. Surely, when the appellant objected to the charge because "it fails to *apply specifically* the law of parties to the *facts in this case*" [emphasis mine] he was referring to the seven words underscored above. About this, surely rational minds would not differ.

Even were I to concede the majority is correct in holding that appellant's objection to the charge was somehow flawed, I cannot reconcile nor subscribe to the majority's ultimate catch all panacea for all jury charge problems, namely: read the charge as a whole. Indeed the majority opinion provides the bench and bar with the road map that the jury in this case sorely needed and did not get, to-wit, McClung, "Jury Charges For Texas Criminal Practice" (Rev.Ed.1985), p. 10:

"... 'Now, if you find from the evidence beyond a reasonable doubt ..., ... either acting alone or with (or 'another') as a party to the offense, *as that term is hereinbefore defined*, did intentionally ...'"

It is readily apparent that the phrase "as that term is hereinbefore defined" is absent from the "application paragraph" of the charge in the instant case, rendering the "read the charge as a whole" cure a hollow incantation.

Having left intact that portion of *Govan*, supra, which the majority found benign, it concluded that even if appellant's objection was sufficient, any error in charging on the law of parties was harmless because the evidence clearly supported appellant's guilt as a primary actor. With this part of the *Govan* post mortem, I agree. But I vehemently dissent to the finding of a malignancy in a proposition of law pronounced overwhelmingly healthy twelve months ago.

TOM G. DAVIS, McCORMICK and MILLER, JJ., join this opinion.