TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00006-CV






In the Matter of R. G.







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-21,194, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING 







 Appellant R.G. appeals from his adjudication of delinquency based on findings that
he committed one offense of assault and two offenses of aggravated assault. See Tex. Pen. Code
Ann. §§ 22.01, .02 (West 1994 & Supp. 2003). After a trial before the court, appellant was
sentenced to one year of probation in his mother's custody. We will affirm the district-court
judgment.


Factual and Procedural Background



 In June 2001, the victim, K.S., was in sixth grade and appellant was in seventh grade. 
The boys knew each other from school and from living in the same neighborhood. K.S. went to
appellant's home. After playing for a while on appellant's PlayStation, the two boys went into
appellant's bedroom, where appellant showed K.S. a BB gun. K.S. said that he had never before
seen appellant with this gun, told appellant to "keep that thing away from me," and walked out of
the room. As he walked out, appellant shot him in the buttocks, which scared and hurt K.S. 
Appellant said he would not shoot him again. K.S. returned to the living room and resumed playing
the game with appellant, who brought the gun with him. K.S. again told appellant to keep the gun
away and appellant responded by shooting K.S. in the chest. K.S. told appellant to stop shooting
him, and "he was not joking."

 K.S. asked if he could get a drink of water so they went into the kitchen. K.S. sat at
the table drinking water. Appellant then took six or seven kitchen knives out of a drawer and began
throwing the knives at K.S.'s feet, which were bare. Some of the knives impaled themselves in the
floor and remained standing on blade point. None of the knives hit K.S.'s feet. K.S. said one knife
was large and was the kind you would use to "cut something big." The others were slender and
about twelve inches long.

 K.S. left the kitchen, returned to the living room, and resumed playing the game. He
turned around and saw appellant pointing the gun at him again. K.S. tried to hide under the coffee
table, but appellant nevertheless shot K.S. in the elbow, which caused K.S. "to roll around on the
floor in pain." K.S. then put on his shoes and went home. When he arrived home, he told Donnie,
an adult relative (his parents were out of town), what had happened, but Donnie did nothing. About
two hours later, appellant came over and K.S. went with him to the park. While playing tag, K.S.
was running up a slide. Appellant "tagged" him; K.S. fell off the slide and "split his head open" at
the eyebrow. (1) A neighbor tried to treat the gash with a butterfly bandage, then took K.S. to the
hospital.

 After being notified of these events, K.S.'s parents returned immediately. K.S.'s
father attempted to talk to appellant's mother, but when she refused K.S.'s father called the police. 
Travis County Sheriff's Deputy Carrie Turner visited K.S.'s home and saw injuries consistent with
K.S. having been struck with a pellet gun or BB. She saw a wound just below the victim's left
nipple and one on his elbow. The pellets had penetrated the skin; the wounds were scabbed from
bleeding. Turner then went to appellant's home and retrieved the gun, which she described as a
Daisy Model 840, .177-caliber BB pellet gun.

 Appellant testified. He said that he and K.S. had been playing a game on the
PlayStation. He admitted getting out his BB gun, but denied shooting K.S. in the buttocks. He said
he was target shooting at a cardboard box set against a mattress. He admitted shooting K.S. in the
chest after they returned to the living room, but claimed it was an accident. Appellant said he was
trying to hit a music stand that K.S. was holding in front of his chest, but which K.S. moved aside
at the last minute. They went into the kitchen where he got out the knives--one was a butcher knife,
the others were just long. Appellant testified that he was flinging the knives at the floor, trying to
make them stick in the floor, not trying to hit K.S. After the two of them returned to the living room
and resumed playing the game, he accidentally shot K.S. again because he thought the safety was on
the gun and he did not intend to fire it.

 The trial court adjudicated appellant delinquent based on its findings that he had
committed aggravated assault by knowingly and intentionally threatening imminent bodily injury to
K.S. by using a knife, a deadly weapon; that he had committed aggravated assault by recklessly
causing bodily injury by shooting him with a pellet gun, a deadly weapon; and committed assault by
knowingly and intentionally shooting K.S. with a pellet gun.

Discussion



Lesser Included Offense?


 In his first issue, appellant contends that the trial court erred in adjudicating him
delinquent based on both aggravated assault and assault for the same offense because conviction of
the lesser offense of assault acquits him of the greater offense of aggravated assault. Because this
case involved more than one offense, the principle that appellant attempts to invoke does not apply.

 If appellant had shot K.S. only once, appellant could not have been convicted of both
aggravated assault and a lesser included offense of assault, as such dual convictions would invoke
the bar against double jeopardy. See Blockburger v. United States, 284 U.S. 299, 304 (1932);
Hughes v. State, 673 S.W.2d 654, 656-57 (Tex. App.--Austin 1984), pet. ref'd, 692 S.W.2d 64 (Tex.
Crim. App. 1985). However, three separate and distinct offenses occurred involving the BB gun:
the shot to the buttocks, then the shot to the chest, and finally the shot to the elbow. These events
were close in time, but constituted separate and distinct transgressions of the law. Murray v. State,
24 S.W.3d 881, 889 (Tex. App.--Waco 2000, pet. ref'd) (citing Hutchins v. State, 992 S.W.2d 629,
633 (Tex. App.--Austin 1999, pet. ref'd untimely filed) (although acts of touching genitals and act
of penetration with penis occurred in close temporal proximity, they were two separate and distinct
acts; convictions for both indecency with a child by contact and aggravated sexual assault of a child
did not violate prohibition against multiple punishments for same offense)); cf. Ochoa v. State, 982
S.W.2d 904, 908 (Tex. Crim. App. 1998) (State not entitled to seek convictions for two offenses
when child did not testify that defendant had touched her more than once.). Appellant was
adjudicated delinquent for assault and aggravated assault using the BB gun based on three separate
and distinct offenses; jeopardy is not implicated. We overrule issue one.


Deadly Weapon


 In his second and third issues, appellant contends that the trial court erred in
adjudicating him delinquent for committing aggravated assault with a deadly weapon because the
evidence was legally insufficient to support a finding that either the BB gun or any knife used was
a deadly weapon. Evidence is legally sufficient when, after viewing the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hanson v. State,
55 S.W.3d 681, 689 (Tex. App.--Austin 2001, pet. ref'd). The definition of "deadly weapon"
pertaining to both issues is: "[A]nything that in the manner of its use or intended use is capable of
causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(17)(B) (West 1994). This
definition does not require that the actor actually intend death or serious bodily injury; an object is
a deadly weapon if the actor intends a use of the object in which it would be capable of causing
death or serious bodily injury. McCain v. State, 22 S.W.2d 497, 503 (Tex. Crim. App. 2000).

 In this case, appellant actually fired the BB gun at K.S. Appellant testified that the
gun had a safety and fired with enough force to recoil when it was fired. K.S. described his injuries
from the shots and the pain they caused. The deputy described injuries consistent with the pellets
having penetrated the skin, causing bleeding. At least one of the incidents involved shooting K.S.
in the chest; given the description of the damage caused by the pellets, if the shot had gone higher,
K.S. might have lost the use of an eye.

 Appellant relies on Mosley v. State, 545 S.W.2d 144 (Tex. Crim. App. 1976), to
support his argument that the BB gun was not a deadly weapon. However, Mosely involved a
question whether an unloaded BB gun was a deadly weapon in a prosecution for assault by threat. 
Id. at 145. There was testimony in Mosely that the gun's pellets would not penetrate the skin, that
it was never pointed at the victim's face, and that the defendant never used the gun or threatened to
use it as a bludgeon. Id. Unlike Mosley, this case involved an actual use of the gun that
demonstrated to the trier of fact the capability of the gun to cause serious bodily injury. See McCain,
22 S.W.3d at 503. There was legally sufficient evidence to support the finding that the BB gun as
used here was a deadly weapon.

 Although a knife generally is not a deadly weapon by design, again it may be a deadly
weapon if in the manner of its use or intended use it was capable of causing death or serious bodily
injury. See Thomas v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991); Garcia v. State, 17
S.W.3d 1, 4 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd). To determine whether a knife is a
deadly weapon in the manner of its use or intended use, the reviewing court examines the following
factors: the size, shape, and sharpness of the knife; the manner of its use or intended use; the nature
or existence of wounds inflicted; and any testimony concerning the knife's life-threatening
capabilities. Thomas, 821 S.W.2d at 619.

 The State can, without expert testimony, prove a particular knife to be a deadly
weapon by showing its size, shape and sharpness, the manner of its use or intended use, and its
capacity to produce death or serious bodily injury. Brown v. State, 716 S.W.2d 939, 946 (Tex. Crim.
App. 1986); Morales v. State, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982). The distance between
the assailant and victim is an important factor. Brown, 716 S.W.2d at 946. Wounds need not be
actually inflicted before a knife can be found to be a deadly weapon. Wade v. State, 951 S.W.2d 886,
893 (Tex. App.--Waco 1997, pet. ref'd).

 In this case, at least one of the knives was characterized by appellant as a butcher
knife; K.S. said one knife was the kind you would use to "cut something big." Appellant and K.S.
were in fairly close proximity in the kitchen. Appellant threw the knives with enough force to
impale them in the kitchen's linoleum floor. The knives landed close enough to K.S.'s bare feet to
cause him to attempt to tuck his feet out of the way. Viewed in the light most favorable to the
verdict, the evidence was legally sufficient to support a finding that at least one of the knives at issue
was a deadly weapon. Accordingly, we overrule issues two and three.


Conclusion



 We have overruled all of appellant's issues presented. Accordingly, we affirm the
district-court judgment.



 __________________________________________

 Lee Yeakel, Justice


Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel


Affirmed


Filed: December 5, 2002


Do Not Publish
1. At trial, K.S. testified that the incident on the slide was an accident.