NO









NO. 12-08-00433-CR

 

                         IN THE COURT OF
APPEALS

 

            TWELFTH COURT OF APPEALS
DISTRICT

 

                                      TYLER, TEXAS

 

 

JOE NATHAN ROBLOW,                                '     APPEAL FROM THE THIRD

APPELLANT

 

V.                                                                         '     JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        '     ANDERSON COUNTY, TEXAS

 





                                                      MEMORANDUM
OPINION

         Joe Nathan Roblow appeals his
conviction for aggravated assault with a deadly weapon.  In his sole issue, he
challenges the legal and factual sufficiency of the evidence to support the
jury’s verdict.  We affirm.

Background

Appellant
was arrested and indicted for the offense of aggravated assault with a deadly
weapon.  He pleaded not guilty.  At trial, Benjamin Davis and Morris Chappell
testified that at around noon on April 19, 2007, they rode their motorcycles on
U.S. Highway 287, headed from Livingston, Texas to Corsicana, Texas.  After
passing through Elkhart, and heading toward Palestine, Davis and Chappell
encountered a truck driven by Jeanette Powell in which Appellant was a
passenger.  What happened next was disputed.

         Davis and
Chappell testified that Powell attempted to pass them in a “no-passing zone.” 
Due to oncoming traffic, Powell swerved back into her lane of travel causing
Davis to go off the side of the road into the grass, almost wrecking his
motorcycle.  Appellant testified that Davis and Chappell were traveling at
approximately fifty miles per hour in a seventy miles per hour zone, which
unreasonably slowed traffic.  Appellant stated that Powell attempted to pass Davis and Chappell three times in a legitimate passing zone, and with each attempt, Davis sped up to prevent Powell from passing.  Finally, according to Appellant, Powell
“punched” the accelerator and passed Davis and Chappell on the fourth attempt.

         Davis and
Chappell testified that as Powell’s vehicle passed them, Appellant made an
offensive hand gesture.  Appellant stated that he did not make such a gesture,
but admitted that Powell did.  Thereafter, all four continued on to Palestine.  While Powell was stopped at a traffic light in Palestine, Appellant exited the
truck and confronted Davis.  Appellant claims that he exited the truck only
because as Davis arrived at the traffic light, he threw a penny into Powell’s
vehicle, which struck Appellant.  Chappell stated that he saw Davis exchange
words with Appellant as Davis arrived at the light. 

Davis
testified that Appellant struck him during the confrontation, pinned him onto
his motorcycle, and grabbed him by the helmet.  As he attempted to force Davis’s head up, Appellant threatened to “cut [Davis] up.”  Davis testified that he saw a
knife that Appellant held down at his side as these events transpired. 
Chappell also saw the knife, pulled out his pistol, and aimed it at Appellant,
ready to shoot Appellant in the event that he moved the knife closer to Davis’s
throat. [1]  Davis testified that he kept
trying to “tuck” his chin so that his throat would not be vulnerable to
attack.  He testified that he feared for his life, he thought he was about to
die, and he wondered when Chappell would shoot Appellant.  Finally, Davis heard a female screaming at Appellant that someone had a gun.  Appellant ceased his
advance, retreated to the truck, and left the scene.  Appellant admitted the
confrontation, but denied ever possessing, brandishing, or using a knife during
the incident.

         Melissa
Thompson witnessed the incident at the stoplight.  She said she saw Appellant
exit the truck and run over to Davis’s motorcycle. She also saw Appellant
strike Davis.  Thompson did not see whether Appellant had a knife.  She
initiated a 911 call and followed Powell’s vehicle until Officer Bill Guthrie
of the Palestine Police Department detained the vehicle.  Since Thompson did
not see a knife and therefore did not report the knife during the 911 call,
Officer Guthrie assumed the incident may have been a fistfight.  He stated that
he more than likely initiated a cursory officer safety patdown, but did not
search the vehicle.  No knife was ever found. 

         Meanwhile,
Davis and Chappell did not report the incident to police.  Instead, they went
to Wells Cycles in Palestine because they knew the owner.  Davis called his
son, who was a police officer in another city.  Davis’s son reported the
incident to the Palestine police.  Detective Nick Webb listened to the 911 tape
and created a photo identification lineup based on Appellant’s drivers license
photo.[2]  Detective Webb contacted
Chappell, Davis, and Thompson to review the lineup after all three gave their
written statements.  Chappell positively identified Appellant as his assailant,
while Davis and Thompson stated that they could not positively identify the
assailant based on the photo lineup.

         At the conclusion of the trial,
the jury convicted Appellant of aggravated assault with a deadly weapon and
sentenced him to three years of imprisonment.  He timely appealed. 

 

Sufficiency
of the Deadly Weapon Implied Finding

In
his sole issue, Appellant challenges the legal and factual sufficiency of the
evidence to support the jury’s finding that the knife used in the commission of
the assault constituted a deadly weapon. 

Standard of
Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560
(1979); LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App.
2000).  The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony.  Barnes v. State, 876 S.W.2d
316, 321 (Tex. Crim. App. 1994).  Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury’s domain.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  Likewise, it is
the responsibility of the jury to weigh the evidence and draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.

In
conducting a factual sufficiency review, we look at the evidence in a neutral
light. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App.
2008).  A verdict will be set aside if the evidence supporting the conviction,
although legally sufficient, is so weak that the jury's determination is
clearly wrong and manifestly unjust, or if there is some objective basis in the
record that shows the great weight and preponderance of the evidence
contradicts the jury's verdict.  Berry v. State,
233 S.W.3d 847, 854 (Tex. Crim. App. 2007); Watson v. State, 204 S.W.3d
404, 414-15, 417 (Tex. Crim. App. 2006).  A clearly wrong and unjust verdict
occurs where the jury’s finding is manifestly unjust, shocks the conscience, or
clearly demonstrates bias.  Berry, 233 S.W.3d at 854.

Although
we are authorized to disagree with the jury’s determination, even if probative
evidence exists that supports the verdict, our evaluation should not
substantially intrude upon the jury’s role as the sole judge of the weight and
credibility of witness testimony.  Santellan v. State, 939 S.W.2d
155, 164 (Tex. Crim. App. 1997).  Unless we conclude that it is necessary to
correct manifest injustice, we must give due deference to the jury's
determinations.  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  It is not enough that we might harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally sufficient
evidence. See Watson, 204 S.W.3d at 417. 

Applicable Law

A
person commits aggravated assault with a deadly weapon if he 1) intentionally,
knowingly, or recklessly, 2) causes bodily injury, 3) to a person, 3) while
exhibiting a deadly weapon.  Tex. Penal
Code Ann. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2009).  

A
deadly weapon is a firearm or anything manifestly designed, made, or adapted
for the purpose of inflicting death or serious bodily injury or anything that
in the manner of its use or intended use is capable of causing death or serious
bodily injury.  Id. §
1.07(a)(17)(A), (B).  “Serious bodily injury” means bodily injury that creates
a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.  Tex. Penal Code Ann. §
1.07(a)(46) (Vernon Supp. 2009).  “Bodily injury” means physical pain, illness,
or impairment of physical condition.  Tex.
Penal Code Ann. § 1.07 (a)(8) (Vernon 2003).  

A
knife does not qualify as a deadly weapon per se under subsection (17)(A).  McCain
v. State, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000).  Therefore, in
the case at hand, the State had the burden to prove that Appellant 1) used or
exhibited a knife 2) that in the manner of its use or intended use was capable
of causing death or serious bodily injury.  See Tex. Penal Code Ann. §§ 1.07(a)(17)(B), 22.021(a)(2)(A)(iv) (Vernon Supp. 2009).  Appellant’s evidentiary challenge relates to the second prong: whether
the knife was a deadly weapon.

Whether
a particular knife is a deadly weapon depends upon the evidence presented.  Thomas
v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991).  Expert testimony
is not required to determine the deadly nature of a weapon.  Brown v.
State, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); Rivera v.
State, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.); In
re D.L., 160 S.W.3d 155, 166 (Tex. App.—Tyler 2005, no pet.).  Nor is
it necessary that the weapon be introduced into evidence.  See Morales v.
State, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982); In re D.L.,
160 S.W.3d at 166.  Also, it is unnecessary to show that any wounds were
inflicted.  Brown, 716 S.W.2d at 946; Davidson v. State,
602 S.W.2d 272, 273 (Tex. Crim. App. [Panel Op.] 1980).

Where,
as here, no actual injury is sustained, the state must present evidence of
other factors to establish that a knife is a deadly weapon.  In re D.L.,
160 S.W.3d at 166.  Factors to consider in that determination include 1) the
physical proximity between the alleged victim and the object; 2) any threats or
words used by the accused; 3) the size, shape, and sharpness of the knife; 4)
the potential of the object to inflict death or serious bodily injury; and 5)
the manner in which the accused allegedly used the object.  Brown,
716 S.W.2d at 946-47; In re D.L., 160 S.W.3d at 166.  No one
factor is determinative, and each case must be examined on its own facts.  Bailey
v. State, 46 S.W.3d 487, 491-92 (Tex. App.—Corpus Christi 2001, pet.
ref'd) (citing Brown, 716 S.W.2d at 946-47).

 

Discussion

Davis
testified that Appellant exited his truck and walked up to Davis, restrained
him, and prevented him from getting off his motorcycle.  Next, Appellant
grabbed Davis by the helmet and attempted to lift his head while threatening to
“cut [Davis] up.”  Davis tried to tuck his chin in order to protect his throat,
because, as he testified, he thought he was “about to die.”  Davis testified
that he saw the knife and saw that it had a blade.  Chappell testified that he
too saw the knife and that it had a blade between three and three and one-half
inches in length.  Given this testimony and viewing the evidence in the light
most favorable to the verdict, we hold that the evidence is legally sufficient
to support the jury’s finding that the knife at issue was a deadly weapon.  See
Brown, 716 S.W.2d at 946-47; In re D.L.,
160 S.W.3d at 166. 

Turning
to factual sufficiency, Appellant argues that the only evidence of the knife’s
characteristics was that the knife’s blade was between three and three and
one-half inches in length, that Appellant held the knife down by his side, and
that he never held the knife in a threatening manner.  He contends that there
was no evidence of its sharpness or shape, and also points out that Davis
suffered no wounds.  Finally, he complains that Detective Webb testified that
knives are capable of causing serious bodily injury or death, leaving the
impression with the jury that all knives are deadly weapons per se. 

Evidence
of a knife’s sharpness or shape is not essential to a determination that the
knife was a deadly weapon.  See In re D.L., 160
S.W.3d at 166.  Moreover, wounds need not be inflicted before a knife can be
determined to be deadly.  Brown, 716 S.W.2d at 946. 
 In fact, mere exhibition of the knife during the offense can be
sufficient.  See Billey v. State, 895 S.W.2d 417, 422-23 (Tex.
App.—Amarillo 1995, pet. ref’d) (holding that the actor need not actively
engage the victim with the weapon, because “by displaying his weapon, . . . an
attacker has shown that the manner in which he intends to use the weapon is
capable of causing death or serious bodily injury.”).  And, even if Detective
Webb left the impression with the jury that all knives are deadly weapons per
se, there is ample other evidence, as described above, that supports the jury’s
finding.

 

Having
reviewed the record in its entirety, we have not observed any evidence that
causes us to conclude the proof that the knife was a deadly weapon is so
obviously weak that the jury’s determination is clearly wrong or manifestly
unjust.  Nor can we conclude that the great weight and preponderance of the
evidence contradicts the jury’s verdict.  Therefore, the evidence is also
factually sufficient to support the trial court’s judgment.  

Appellant’s
sole issue is overruled.

Disposition

We affirm the
judgment of the trial court. 



                                                                                                    
JAMES T. WORTHEN    

                                                                                                                
Chief Justice

 

 

Opinion
delivered December 23, 2009.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH) 

 









[1] Chappell
possessed a valid concealed handgun license.





[2] Officer Guthrie wrote down Appellant’s drivers’
license information during the traffic stop so it could be used in any further
investigation.