# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00006-CV

## In the Matter of R. G.

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-21,194, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

Appellant R.G. appeals from his adjudication of delinquency based on findings that he committed one offense of assault and two offenses of aggravated assault. *See* Tex. Pen. Code Ann. '' 22.01, .02 (West 1994 & Supp. 2003). After a trial before the court, appellant was sentenced to one year of probation in his mother=s custody. We will affirm the district-court judgment.

## Factual and Procedural Background

In June 2001, the victim, K.S., was in sixth grade and appellant was in seventh grade. The boys knew each other from school and from living in the same neighborhood. K.S. went to appellant=s home. After playing for a while on appellant=s PlayStation, the two boys went into appellant=s bedroom, where appellant showed K.S. a BB gun. K.S. said that he had never before seen appellant with this gun, told appellant to Akeep that thing away from me,@ and walked out of the room. As he walked out, appellant shot him in the buttocks, which scared and hurt K.S. Appellant said he would not shoot him again. K.S. returned to the living room and resumed playing the game with appellant, who brought the gun with him.

K.S. again told appellant to keep the gun away and appellant responded by shooting K.S. in the chest. K.S. told appellant to stop shooting him, and Ahe was not joking.@

K.S. asked if he could get a drink of water so they went into the kitchen. K.S. sat at the table drinking water. Appellant then took six or seven kitchen knives out of a drawer and began throwing the knives at K.S.=s feet, which were bare. Some of the knives impaled themselves in the floor and remained standing on blade point. None of the knives hit K.S.=s feet. K.S. said one knife was large and was the kind you would use to Acut something big.@ The others were slender and about twelve inches long.

K.S. left the kitchen, returned to the living room, and resumed playing the game. He turned around and saw appellant pointing the gun at him again. K.S. tried to hide under the coffee table, but appellant nevertheless shot K.S. in the elbow, which caused K.S. Ato roll around on the floor in pain.@ K.S. then put on his shoes and went home. When he arrived home, he told Donnie, an adult relative (his parents were out of town), what had happened, but Donnie did nothing. About two hours later, appellant came over and K.S. went with him to the park. While playing tag, K.S. was running up a slide. Appellant Atagged@ him; K.S. fell off the slide and Asplit his head open@ at the eyebrow.[1] A neighbor tried to treat the gash with a butterfly bandage, then took K.S. to the hospital.

After being notified of these events, K.S.=s parents returned immediately. K.S.=s father attempted to talk to appellant=s mother, but when she refused K.S.=s father called the police. Travis County Sheriff=s Deputy Carrie Turner visited K.S.=s home and saw injuries consistent with K.S. having been struck

---

[1] At trial, K.S. testified that the incident on the slide was an accident.

with a pellet gun or BB. She saw a wound just below the victim=s left nipple and one on his elbow. The pellets had penetrated the skin; the wounds were scabbed from bleeding. Turner then went to appellant=s home and retrieved the gun, which she described as a Daisy Model 840, .177-caliber BB pellet gun.

Appellant testified. He said that he and K.S. had been playing a game on the PlayStation. He admitted getting out his BB gun, but denied shooting K.S. in the buttocks. He said he was target shooting at a cardboard box set against a mattress. He admitted shooting K.S. in the chest after they returned to the living room, but claimed it was an accident. Appellant said he was trying to hit a music stand that K.S. was holding in front of his chest, but which K.S. moved aside at the last minute. They went into the kitchen where he got out the knivesCone was a butcher knife, the others were just long. Appellant testified that he was flinging the knives at the floor, trying to make them stick in the floor, not trying to hit K.S. After the two of them returned to the living room and resumed playing the game, he accidentally shot K.S. again because he thought the safety was on the gun and he did not intend to fire it.

The trial court adjudicated appellant delinquent based on its findings that he had committed aggravated assault by knowingly and intentionally threatening imminent bodily injury to K.S. by using a knife, a deadly weapon; that he had committed aggravated assault by recklessly causing bodily injury by shooting him with a pellet gun, a deadly weapon; and committed assault by knowingly and intentionally shooting K.S. with a pellet gun.

**Discussion**

*Lesser Included Offense?*

In his first issue, appellant contends that the trial court erred in adjudicating him delinquent based on both aggravated assault and assault for the same offense because conviction of the lesser offense of assault acquits him of the greater offense of aggravated assault. Because this case involved more than *one* offense, the principle that appellant attempts to invoke does not apply.

If appellant had shot K.S. only once, appellant could not have been convicted of both aggravated assault and a lesser included offense of assault, as such dual convictions would invoke the bar against double jeopardy. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Hughes v. State*, 673 S.W.2d 654, 656-57 (Tex. App.CAustin 1984), *pet. ref=d*, 692 S.W.2d 64 (Tex. Crim. App. 1985). However, three separate and distinct offenses occurred involving the BB gun: the shot to the buttocks, then the shot to the chest, and finally the shot to the elbow. These events were close in time, but constituted separate and distinct transgressions of the law. *Murray v. State*, 24 S.W.3d 881, 889 (Tex. App.CWaco 2000, pet. ref=d) (citing *Hutchins v. State*, 992 S.W.2d 629, 633 (Tex. App.CAustin 1999, pet. ref=d untimely filed) (although acts of touching genitals and act of penetration with penis occurred in close temporal proximity, they were two separate and distinct acts; convictions for both indecency with a child by contact and aggravated sexual assault of a child did not violate prohibition against multiple punishments for same offense)); *cf. Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998) (State not entitled to seek convictions for two offenses when child did not testify that defendant had touched her

more than once.). Appellant was adjudicated delinquent for assault and aggravated assault using the BB gun based on three separate and distinct offenses; jeopardy is not implicated. We overrule issue one.

*Deadly Weapon*

In his second and third issues, appellant contends that the trial court erred in adjudicating him delinquent for committing aggravated assault with a deadly weapon because the evidence was legally insufficient to support a finding that either the BB gun or any knife used was a deadly weapon. Evidence is legally sufficient when, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hanson v. State*, 55 S.W.3d 681, 689 (Tex. App.CAustin 2001, pet. ref=d). The definition of Adeadly weapon@ pertaining to both issues is: A[A]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury.@ Tex. Pen. Code Ann. ' 1.07(17)(B) (West 1994). This definition does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be *capable* of causing death or serious bodily injury. *McCain v. State*, 22 S.W.2d 497, 503 (Tex. Crim. App. 2000).

In this case, appellant actually fired the BB gun at K.S. Appellant testified that the gun had a safety and fired with enough force to recoil when it was fired. K.S. described his injuries from the shots and the pain they caused. The deputy described injuries consistent with the pellets having penetrated the skin, causing bleeding. At least one of the incidents involved shooting K.S. in the chest; given the

5

description of the damage caused by the pellets, if the shot had gone higher, K.S. might have lost the use of an eye.

Appellant relies on *Mosley v. State*, 545 S.W.2d 144 (Tex. Crim. App. 1976), to support his argument that the BB gun was not a deadly weapon. However, *Mosely* involved a question whether an unloaded BB gun was a deadly weapon in a prosecution for assault by threat. *Id*. at 145. There was testimony in *Mosely* that the gun=s pellets would not penetrate the skin, that it was never pointed at the victim=s face, and that the defendant never used the gun or threatened to use it as a bludgeon. *Id.* Unlike *Mosley*, this case involved an actual use of the gun that demonstrated to the trier of fact the *capability* of the gun to cause serious bodily injury. *See McCain*, 22 S.W.3d at 503. There was legally sufficient evidence to support the finding that the BB gun as used here was a deadly weapon.

Although a knife generally is not a deadly weapon by design, again it may be a deadly weapon if in the manner of its use or intended use it was capable of causing death or serious bodily injury. *See Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991); *Garcia v. State*, 17 S.W.3d 1, 4 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d). To determine whether a knife is a deadly weapon in the manner of its use or intended use, the reviewing court examines the following factors: the size, shape, and sharpness of the knife; the manner of its use or intended use; the nature or existence of wounds inflicted; and any testimony concerning the knife=s life-threatening capabilities. *Thomas*, 821 S.W.2d at 619.

The State can, without expert testimony, prove a particular knife to be a deadly weapon by showing its size, shape and sharpness, the manner of its use or intended use, and its capacity to produce death or serious bodily injury. *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); *Morales*

**6**

*v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982). The distance between the assailant and victim is an important factor. *Brown*, 716 S.W.2d at 946. Wounds need not be actually inflicted before a knife can be found to be a deadly weapon. *Wade v. State*, 951 S.W.2d 886, 893 (Tex. App.CWaco 1997, pet. ref=d).

In this case, at least one of the knives was characterized by appellant as a butcher knife; K.S. said one knife was the kind you would use to Acut something big.@ Appellant and K.S. were in fairly close proximity in the kitchen. Appellant threw the knives with enough force to impale them in the kitchen=s linoleum floor. The knives landed close enough to K.S.=s bare feet to cause him to attempt to tuck his feet out of the way. Viewed in the light most favorable to the verdict, the evidence was legally sufficient to support a finding that at least one of the knives at issue was a deadly weapon. Accordingly, we overrule issues two and three.

## Conclusion

We have overruled all of appellant=s issues presented. Accordingly, we affirm the district-court judgment.

_____

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   December 5, 2002

Do Not Publish