# NO. 12-08-00433-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOE NATHAN ROBLOW,*<br>*APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Joe Nathan Roblow appeals his conviction for aggravated assault with a deadly weapon. In his sole issue, he challenges the legal and factual sufficiency of the evidence to support the jury's verdict. We affirm.

### BACKGROUND

Appellant was arrested and indicted for the offense of aggravated assault with a deadly weapon. He pleaded not guilty. At trial, Benjamin Davis and Morris Chappell testified that at around noon on April 19, 2007, they rode their motorcycles on U.S. Highway 287, headed from Livingston, Texas to Corsicana, Texas. After passing through Elkhart, and heading toward Palestine, Davis and Chappell encountered a truck driven by Jeanette Powell in which Appellant was a passenger. What happened next was disputed.

Davis and Chappell testified that Powell attempted to pass them in a "no-passing zone." Due to oncoming traffic, Powell swerved back into her lane of travel causing Davis to go off the side of the road into the grass, almost wrecking his motorcycle. Appellant testified that Davis and

Chappell were traveling at approximately fifty miles per hour in a seventy miles per hour zone, which unreasonably slowed traffic.  Appellant stated that Powell attempted to pass Davis and Chappell three times in a legitimate passing zone, and with each attempt, Davis sped up to prevent Powell from passing.  Finally, according to Appellant, Powell "punched" the accelerator and passed Davis and Chappell on the fourth attempt.

Davis and Chappell testified that as Powell's vehicle passed them, Appellant made an offensive hand gesture.  Appellant stated that he did not make such a gesture, but admitted that Powell did.  Thereafter, all four continued on to Palestine.  While Powell was stopped at a traffic light in Palestine, Appellant exited the truck and confronted Davis.  Appellant claims that he exited the truck only because as Davis arrived at the traffic light, he threw a penny into Powell's vehicle, which struck Appellant.  Chappell stated that he saw Davis exchange words with Appellant as Davis arrived at the light.

Davis testified that Appellant struck him during the confrontation, pinned him onto his motorcycle, and grabbed him by the helmet.  As he attempted to force Davis's head up, Appellant threatened to "cut [Davis] up."  Davis testified that he saw a knife that Appellant held down at his side as these events transpired.  Chappell also saw the knife, pulled out his pistol, and aimed it at Appellant, ready to shoot Appellant in the event that he moved the knife closer to Davis's throat. [1]
 Davis testified that he kept trying to "tuck" his chin so that his throat would not be vulnerable to attack.  He testified that he feared for his life, he thought he was about to die, and he wondered when Chappell would shoot Appellant.  Finally, Davis heard a female screaming at Appellant that someone had a gun.  Appellant ceased his advance, retreated to the truck, and left the scene.  Appellant admitted the confrontation, but denied ever possessing, brandishing, or using a knife during the incident.

Melissa Thompson witnessed the incident at the stoplight.  She said she saw Appellant exit the truck and run over to Davis's motorcycle. She also saw Appellant strike Davis.  Thompson did not see whether Appellant had a knife.  She initiated a 911 call and followed Powell's vehicle until Officer Bill Guthrie of the Palestine Police Department detained the vehicle.  Since Thompson did

---

[1] Chappell possessed a valid concealed handgun license.

not see a knife and therefore did not report the knife during the 911 call, Officer Guthrie assumed the incident may have been a fistfight. He stated that he more than likely initiated a cursory officer safety patdown, but did not search the vehicle. No knife was ever found.

Meanwhile, Davis and Chappell did not report the incident to police. Instead, they went to Wells Cycles in Palestine because they knew the owner. Davis called his son, who was a police officer in another city. Davis's son reported the incident to the Palestine police. Detective Nick Webb listened to the 911 tape and created a photo identification lineup based on Appellant's drivers license photo.[2] Detective Webb contacted Chappell, Davis, and Thompson to review the lineup after all three gave their written statements. Chappell positively identified Appellant as his assailant, while Davis and Thompson stated that they could not positively identify the assailant based on the photo lineup.

At the conclusion of the trial, the jury convicted Appellant of aggravated assault with a deadly weapon and sentenced him to three years of imprisonment. He timely appealed.

## SUFFICIENCY OF THE DEADLY WEAPON IMPLIED FINDING

In his sole issue, Appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding that the knife used in the commission of the assault constituted a deadly weapon.

### Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the

---

[2] Officer Guthrie wrote down Appellant's drivers' license information during the traffic stop so it could be used in any further investigation.

evidence is entirely within the jury's domain. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Likewise, it is the responsibility of the jury to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

In conducting a factual sufficiency review, we look at the evidence in a neutral light. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). A verdict will be set aside if the evidence supporting the conviction, although legally sufficient, is so weak that the jury's determination is clearly wrong and manifestly unjust, or if there is some objective basis in the record that shows the great weight and preponderance of the evidence contradicts the jury's verdict. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006). A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Berry*, 233 S.W.3d at 854.

Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the jury's determinations. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See Watson*, 204 S.W.3d at 417.

**Applicable Law**

A person commits aggravated assault with a deadly weapon if he 1) intentionally, knowingly, or recklessly, 2) causes bodily injury, 3) to a person, 3) while exhibiting a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2009).

A deadly weapon is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id*. § 1.07(a)(17)(A), (B).

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon Supp. 2009). "Bodily injury" means physical pain, illness, or impairment of physical condition. TEX. PENAL CODE ANN. § 1.07 (a)(8) (Vernon 2003).

A knife does not qualify as a deadly weapon per se under subsection (17)(A). *McCain v. State*, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000). Therefore, in the case at hand, the State had the burden to prove that Appellant 1) used or exhibited a knife 2) that in the manner of its use or intended use was capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(17)(B), 22.021(a)(2)(A)(iv) (Vernon Supp. 2009). Appellant's evidentiary challenge relates to the second prong: whether the knife was a deadly weapon.

Whether a particular knife is a deadly weapon depends upon the evidence presented. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). Expert testimony is not required to determine the deadly nature of a weapon. *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); *Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.); *In re D.L.*, 160 S.W.3d 155, 166 (Tex. App.—Tyler 2005, no pet.). Nor is it necessary that the weapon be introduced into evidence. *See Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982); *In re D.L.*, 160 S.W.3d at 166. Also, it is unnecessary to show that any wounds were inflicted. *Brown*, 716 S.W.2d at 946; *Davidson v. State*, 602 S.W.2d 272, 273 (Tex. Crim. App. [Panel Op.] 1980).

Where, as here, no actual injury is sustained, the state must present evidence of other factors to establish that a knife is a deadly weapon. *In re D.L.*, 160 S.W.3d at 166. Factors to consider in that determination include 1) the physical proximity between the alleged victim and the object; 2) any threats or words used by the accused; 3) the size, shape, and sharpness of the knife; 4) the potential of the object to inflict death or serious bodily injury; and 5) the manner in which the accused allegedly used the object. *Brown*, 716 S.W.2d at 946-47; *In re D.L.*, 160 S.W.3d at 166. No one factor is determinative, and each case must be examined on its own facts. *Bailey v. State*, 46 S.W.3d 487, 491-92 (Tex. App.—Corpus Christi 2001, pet. ref'd) (citing *Brown*, 716 S.W.2d at 946-47).

5

## Discussion

Davis testified that Appellant exited his truck and walked up to Davis, restrained him, and prevented him from getting off his motorcycle. Next, Appellant grabbed Davis by the helmet and attempted to lift his head while threatening to "cut [Davis] up." Davis tried to tuck his chin in order to protect his throat, because, as he testified, he thought he was "about to die." Davis testified that he saw the knife and saw that it had a blade. Chappell testified that he too saw the knife and that it had a blade between three and three and one-half inches in length. Given this testimony and viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support the jury's finding that the knife at issue was a deadly weapon. *See Brown*, 716 S.W.2d at 946-47; *In re D.L.*, 160 S.W.3d at 166.

Turning to factual sufficiency, Appellant argues that the only evidence of the knife's characteristics was that the knife's blade was between three and three and one-half inches in length, that Appellant held the knife down by his side, and that he never held the knife in a threatening manner. He contends that there was no evidence of its sharpness or shape, and also points out that Davis suffered no wounds. Finally, he complains that Detective Webb testified that knives are capable of causing serious bodily injury or death, leaving the impression with the jury that all knives are deadly weapons per se.

Evidence of a knife's sharpness or shape is not essential to a determination that the knife was a deadly weapon. *See In re D.L.*, 160 S.W.3d at 166. Moreover, wounds need not be inflicted before a knife can be determined to be deadly. *Brown*, 716 S.W.2d at 946. In fact, mere exhibition of the knife during the offense can be sufficient. *See Billey v. State*, 895 S.W.2d 417, 422-23 (Tex. App.—Amarillo 1995, pet. ref'd) (holding that the actor need not actively engage the victim with the weapon, because "by displaying his weapon, . . . an attacker has shown that the manner in which he intends to use the weapon is capable of causing death or serious bodily injury."). And, even if Detective Webb left the impression with the jury that all knives are deadly weapons per se, there is ample other evidence, as described above, that supports the jury's finding.

6

Having reviewed the record in its entirety, we have not observed any evidence that causes us to conclude the proof that the knife was a deadly weapon is so obviously weak that the jury's determination is clearly wrong or manifestly unjust. Nor can we conclude that the great weight and preponderance of the evidence contradicts the jury's verdict. Therefore, the evidence is also factually sufficient to support the trial court's judgment.

Appellant's sole issue is overruled.

## DISPOSITION

We *affirm* the judgment of the trial court.

 **JAMES T. WORTHEN** 
Chief Justice

Opinion delivered December 23, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

7