**MODIFY and AFFIRM; and Opinion Filed February 10, 2014.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-13-00225-CR**

**ROSS BRANTLEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1300014-V**

## MEMORANDUM OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Fillmore

A jury convicted Ross Brantley of assault involving family violence, found that Brantley used a deadly weapon during the assault, and assessed punishment of six years' imprisonment. In four points of error, Brantley asserts the evidence is insufficient to support either the deadly weapon finding or the trial court's assessment of court costs, and the judgment should be modified to reflect that Brantley pleaded guilty to the offense and there was no plea bargain. The State requests we further modify the judgment to reflect the case was tried to a jury. As modified, we affirm the trial court's judgment. We issue this memorandum opinion because the law to be applied in this case is well settled. *See* TEX. R. APP. P. 47.4.

## Background

On May 12, 2011, Brantley was married to, but not living with, Kardelia Smith. Throughout the day, Smith and Brantley were arguing through text messages about Brantley's son living with him. According to Smith, Brantley also sent her text messages that led her to believe he was being unfaithful. Although advised not to do so by Brantley and Vanessa Raab, Brantley's mother, Smith decided to go to Raab's apartment, where Brantley was living, to discuss the issues with him.

Brantley was not at the apartment when Smith arrived, so she began talking to Raab about the text messages she had received from Brantley. Brantley came home approximately thirty minutes later, but refused to acknowledge Smith and went into his bedroom. Smith followed Brantley into his bedroom and locked the door. Both Brantley and Smith testified they had an altercation in the bedroom

Smith testified that she reclined on the bed beside Brantley and attempted to talk to him. Brantley turned his back to her and began looking at his Facebook page on his cellphone. Brantley had a brief telephone conversation with the mother of one of his children and then returned to his Facebook page. Smith saw a picture of a woman on Brantley's Facebook page and believed it was the woman who Brantley was "cheating with." Smith tried to grab Brantley's cellphone.

According to Smith, Brantley jumped out of bed. Thinking that something might be in the bed, Smith jumped up as well. Brantley then swung her around and began choking her with his arms around her neck. Smith testified that Brantley was "very much taller" than she is, her feet were off the floor, and Brantley was applying pressure with both arms. Smith could not breathe and felt pain in her neck. Brantley choked Smith to the point that she urinated on herself. After twenty or thirty seconds, Brantley threw her face-down on the bed. Smith began to scream

and told Brantley to stop. According to Smith, Brantley then straddled her. Smith tried to turn to get Brantley off of her, but could not turn because Brantley was too heavy. Brantley began to punch Smith on her head and face and hit her fifty or sixty times. Smith testified that Brantley was a professional boxer, and it felt as if somebody was dropping bricks on her head. Smith thought she was going to die.

Smith testified that, during the assault, Brantley's wedding ring cut her face "completely open." She was required to have stitches to repair the cut. Her face was swollen and bruised. She also had three fractured fingers, two on her left hand one and one on her right hand, from attempting to protect her head from Brantley's punches.

Brantley admitted he had three previous assault convictions based on complaints by his sister, his former wife, and the mother of three of his children. He also admitted that Smith obtained a protective order against him following the altercation, and he was convicted of violating the protective order. However, he denied that he assaulted Smith. According to Brantley, if he hit someone fifty or sixty times, that person would be dead.

Brantley testified he was bipolar and suffered from seizures. He had a seizure on May 12, 2011 and took medication for the seizure that makes him sleep. He was asleep in his bedroom when Smith came in and snatched a towel that he was using to cover his face. Smith wanted to talk to Brantley about his son being at the apartment. Smith started "ridiculing" him about how he was unable to take care of his children, and he rolled over onto his stomach. Smith then jumped on his back, straddled him, put him in a headlock, and started choking him. The mother of one of Brantley's children called, and Smith tried to take the cellphone away from him. Smith then bit his ear and pulled back. When she did so, he ducked under her arm. Smith's wedding ring scratched her face, and she hit herself in the eye. Brantley denied that he was wearing his wedding ring at the time.

Smith testified she left the apartment after Raab and her boyfriend entered the bedroom. Brantley's niece called 911, and Smith eventually went to a hospital for treatment. At Raab's insistence, Brantley left the apartment and attempted to turn himself in at Lew Sterrett.

The jury convicted Brantley of assault involving family violence. During the punishment phase of the trial, Smith testified it took her over two months to recover from the assault. During the assault, she thought she was going to die or suffer serious bodily injury from Brantley punching her. She believes that Brantley's hands are a deadly weapon. The jury found that Brantley used a deadly weapon, his hands, during the assault and assessed punishment of six years' imprisonment. In the judgment, the trial court assessed court costs of $219.

### Sufficiency of the Evidence

In his first point of error, Brantley contends there is insufficient evidence to support the jury's finding that he used a deadly weapon during the assault. Brantley specifically argues Smith did not suffer serious bodily injury and there was no testimony from a medical professional or police officer that Brantley's "assault with his hands was capable of causing death or serious bodily injury in their manner of use or intended use."

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 1763 (2012). The jury, as the fact finder, is entitled to judge the credibility of

–4–

the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the fact finder. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury").

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2013); *see also McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). While hands are not a deadly weapon per se, a jury may find that they were used as a deadly weapon based upon their manner of use or intended use and their capacity to produce death or serious bodily injury. *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004) (citing *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. [Panel Op.] 1983)). The State, however, need not show that the hands actually caused serious bodily injury or death, only that the hands in the manner of their use were capable of causing death or serious bodily injury. *McCain*, 22 S.W.3d at 503; *see also Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). Either expert testimony or lay testimony may be sufficient to support a deadly weapon finding. *English v. State*, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983); *Wilson v. State*, 391 S.W.3d 131, 137 (Tex. App.—Texarkana 2012, no pet.).

When determining whether a hand or a fist is a deadly weapon, the jury may consider all of the evidence presented, including the physical proximity between the alleged victim and the

object; any threats or words used by the accused; the size and shape of the object; the potential of the object to inflict death or serious bodily injury; the manner in which the accused allegedly used the object; testimony by the victim that she feared death or serious bodily injury; and testimony as to the weapon's potential for causing death or serious bodily injury. *Kennedy v. State*, 402 S.W.3d 796, 802 (Tex. App.—Fort Worth 2013, pet. filed) (mem. op.) (citing *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986)); *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). "No one factor is determinative, and an appellate court must examine each case on its own facts to determine whether the fact finder could have concluded from the surrounding circumstances that the object used was a deadly weapon." *In re S.B.*, 117 S.W.3d 443, 447 (Tex. App.—Fort Worth 2003, no pet.) (citing *Brown*, 716 S.W.2d at 947).

In this case, the evidence showed that Brantley was both taller and heavier than Smith. Smith testified that Brantley used his forearms to choke her until she urinated on herself. She suffered pain from the choking and was unable to breathe. Smith also testified that, after Brantley threw her on the bed, he straddled her and hit her in the face and head numerous times. Brantley was a professional boxer and, according to Smith, the blows felt like bricks falling on her head. She thought that she was going to die or suffer serious bodily injury. In Smith's opinion, Brantley's hands were a deadly weapon. Brantley confirmed that he was a professional boxer and testified that, if he hit somebody fifty or sixty times, they would be dead. Photographs taken of Smith after the altercation showed that her face was extremely swollen and bruised and that stiches were required to close the cut in her cheek. Smith testified she also had three fractured fingers from trying to defend her head from the blows.

Although Brantley denied assaulting Smith and contended Smith was the aggressor, it was the role of the jury to make credibility determinations and resolve the conflicts in the

evidence.  *See Jackson*, 443 U.S. at 319; *Williams*, 235 S.W.3d at 751.  Reviewing all the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found that Brantley's hands were a deadly weapon.  *See Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667; *see also Lane*, 151 S.W.3d at 192 (evidence that closed hand was used to strike victim in head sufficient to support finding hand was deadly weapon); *Judd v. State*, 923 S.W.2d 135, 140–41 (Tex. App.—Fort Worth 1996, pet. ref'd) (evidence that hands were used to choke victim is sufficient to support finding hands were a deadly weapon).  We resolve Brantley's first point of error against him.

### Court Costs

In his fourth point of error, Brantley requests we modify the trial court's judgment to delete the requirement he pay court costs because the clerk's record does not contain a bill of costs.  If a criminal action is appealed, "an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is . . . appealed."  TEX. CODE CRIM. PROC. ANN. art. 103.006 (West 2006).  Costs may not be collected from the person charged with the costs until a written bill, containing the items of cost, is produced and signed by the officer who charged the cost or the officer entitled to receive payment for the cost.  *Id.* art. 103.001.

The clerk's record in this case did not contain a copy of the bill of costs.  In light of Brantley's specific complaint that the clerk's record did not contain a bill of costs, we ordered the Dallas County District Clerk to file a supplemental clerk's record containing the certified bill of costs associated with this case, and the clerk did so.  *See* TEX. R. APP. P. 34.5(c)(1) (rules of appellate procedure allow supplementation of clerk's record if relevant items have been omitted).  Brantley's complaint that the evidence is insufficient to support the imposition of costs because the clerk's record did not contain a bill of costs is now moot.  *See Coronel v. State*, No. 05–12–

00493–CR, 2013 WL 3874446, at *4 (Tex. App.—Dallas July 29, 2013, pet. ref'd) (citing *Franklin v. State*, 402 S.W.3d 894, 895 (Tex. App.—Dallas 2013, no pet.)). We resolve Brantley's fourth point of error against him.[1]

## Modification of Judgment

In his second and third points of error, Brantley requests we modify the trial court's judgment to accurately reflect that he pleaded guilty to the offense and no plea bargain was entered. The State concedes the modifications requested by Brantley are appropriate and requests that we further modify the trial court's judgment to reflect Brantley did not waive his right to trial by jury. We resolve Brantley's second and third points of error in his favor.

We may modify a trial court's written judgment to correct a clerical error when we have the necessary information before us to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). The trial court's judgment erroneously reflects that Brantley waived his right to a jury trial and the case was tried to the court, Brantley pleaded guilty to the offense, and the term of the plea bargain was six years' imprisonment. Consequently, we reform the trial court's judgment to reflect it is a "Judgment of Conviction by Jury," Brantley pleaded not guilty to the offense, and the verdict of the jury was "guilty."

---

[1] We note that Brantley does not challenge the propriety or legality of the specific costs assessed; therefore, we do not address these matters.

As modified, the trial court's judgment is affirmed.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


Do Not Publish
TEX. R. APP. P. 47

130225F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROSS BRANTLEY, Appellant

No. 05-13-00225-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F-1300014-V.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The title of the judgment is modified to state "JUDGMENT OF CONVICTION BY JURY";

The section of the judgment titled "Plea to Offense" is modified to state "NOT GUILTY";

The section of the judgment titled "Terms of Plea Bargain" is modified to state "Verdict of Jury" and the substance of that section is modified to state "GUILTY."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 10th day of February, 2014.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

–10–