# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-01-00671-CR

**Michael Willis, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT NO. 00-3027, HONORABLE FRED A. MOORE, JUDGE PRESIDING

Appellant Michael Willis appeals from his conviction for the offense of possessing with intent to deliver four or more grams but less than 200 grams of cocaine. *See* Tex. Health & Safety Code Ann. ' 481.112(a), (d) (West Supp. 2002). The trial court assessed appellant=s punishment, enhanced by a prior felony conviction, at imprisonment for twenty-five years. On appeal, appellant asserts that the evidence is legally and factually insufficient and that the trial court erred in charging the jury and in admitting inadmissible evidence. We will affirm the judgment.

In his first point of error, appellant asserts that the Aevidence adduced in the trial of this case was factually and legally insufficient to support the finding of guilt of the offense of possessing a controlled substance with the intent to deliver.@ Appellant sets out only the standard for factual sufficiency and his argument is directed at factual insufficiency. Nevertheless, we will determine whether the evidence is legally and factually sufficient.

In reviewing the legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.CAustin 2000, pet. ref=d). The standard of review is the same whether the evidence is direct, circumstantial, or both. *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Banda v. State*, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994). All of the evidence that the jury was permitted, properly or improperly, to consider must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.CAustin 1997, no pet.).

In a factual sufficiency review, we are required to give deference to the jury=s verdict and examine all of the evidence impartially, setting aside the jury verdict Aonly if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.@ *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review is to determine whether a neutral review of all of the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury=s determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

While on patrol, City of Austin police officer James Burns received a dispatcher=s call that a burglar alarm had been activated at a used car dealership on Burnet Road. Officer Burns responded to the call and arrived at the dealership at approximately 1:20 a.m., more than thirty minutes after the alarm had been activated. As Burns walked toward the building, he did not hear the burglar alarm, but he saw a car backed into the driveway; the car=s engine was running and the windows were open. As Burns was attempting to get the car=s license plate number, he saw a man, later identified as appellant, walk around the building. Burns asked the man about the car. Appellant first said it was his car, then said he was driving the car but that it belonged to a friend whom he did not name. Because he had seen appellant reach into his pocket, Burns frisked appellant and asked him if he had any weapons in his car. Appellant said he had no weapons. Burns glanced into the car and saw two handguns on the floorboard. Burns also saw a law enforcement officer=s badge on the console between the front seats. Burns asked appellant if he were a police officer and appellant told Burns he was not.[1] Burns then placed handcuffs on appellant and waited for backup officers. At the time of his arrest, appellant denied he had an accomplice.

---

[1] The badge on the console was a Smith County officer=s badge; appellant did not explain his possession of the badge.

While one of the backup officers took custody of appellant, Officers Burns and Doug Drake found that a glass door of the building on the dealership property had been shattered. A large rock was on the floor about four feet inside the building. A crowbar and another large tool were just inside the door. Desks, a television set, and other property inside the building had been ransacked and vandalized. Phone and alarm system wires were torn loose. No one was found in the building. The car appellant had been driving was searched. Twelve small plastic bags each containing a substance later determined to be cocaine were found in a bag on the rear floorboard.

Drake and a Sergeant McDonald removed appellant from the police car where he had been detained after his arrest. Appellant had fresh, bloody cuts on his hand and elbow. The back of appellant=s T-shirt was blood-smeared and there were particles of glass on the tops and soles of his shoes. McDonald instructed Drake to advise appellant of his *Miranda* rights.[2] After Drake did so, McDonald told Drake to search appellant. In appellant=s pocket, wrapped in a Kleenex, Drake found a small plastic bag containing a white substance that Drake believed was cocaine. McDonald, standing nearby, said to appellant, AOh, you=re f____d now.@ Drake testified that in response to McDonald=s comment, appellant angrily said something to the effect, AYou just accused me of being a drug addict . . . I have an alcohol problem. I=m an alcoholic. If I had that amount, I=d be in the area selling it.@ The packet of cocaine found in appellant=s pocket was packaged like the twelve packets found in the car. Officers testified that cocaine was packaged in packets like these for sale and delivery.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The day after the burglary, Detectives Gena Curtis and Howard Staha interviewed appellant. The interview was videotaped and portions of the videotape were admitted in evidence. On the tape, appellant=s statements were fragmented and incomplete, conflicting and contradictory. We will summarize appellant=s statements made during the interview. Appellant was partying with his friend Scott Larson at the Dallas Night Club on Burnet Road. Larson, whom appellant had known since appellant was three years old, was a Acool@ guy who always had money. Larson=s money came from selling cocaine and from Larson=s wife=s military pay. Appellant had received the cocaine found in his pocket from Larson. Appellant was to deliver the packet of cocaine to one of Larson=s customers in exchange for forty dollars. Appellant and Larson drove from the night club to the car dealership. Appellant saw the handguns in the car but he did not know where they came from. At the car dealership lot, appellant was looking at a car or a truck. Appellant was nearby when Larson shattered the glass door; he assumed Larson entered the building but he did not see him do so. Appellant speculated that Larson burglarized the building to obtain his brother Stephen=s title to the car that appellant told the officers he had been driving. Appellant denied that the cocaine found in the car belonged to him. Appellant said that about twice a week Larson obtained cocaine from a man named Daniel or Danny who was an employee of Allstate Insurance Company. Appellant denied using drugs generally but admitted he had used cocaine for the first time on the night he was arrested.

After the car had been impounded, Curtis obtained Scott Larson=s consent to again search the car. Two checkbooks belonging to appellant, appellant=s shirt, shaving kit, and coin purse were found in the car. Property belonging to Larson and his mother was found in the car. Curtis found Larson=s business cards and cell phone and Larson=s mother=s checkbook. Larson=s mother was employed by Allstate Insurance Company. Curtis also found under the front seat of the car, where appellant told her Larson kept cocaine, a package containing cocaine and drug paraphernalia. Curtis also talked on the telephone with Larson=s brother Stephen who was in Florida. Stephen Larson was the owner of the car searched.

On cross-examination and redirect examination of Curtis, additional testimony was elicited without objection. After appellant=s arrest, Curtis talked with Scott Larson on the telephone and in her office. Larson told Curtis that appellant had accompanied him to the car dealership on more than one occasion when Larson was making car payments. Larson denied going to the dealership on the night of the burglary. Larson told Curtis that he and appellant were partying at the Dallas Night Club that night. At about 11:00 p.m., appellant thought Larson was too intoxicated to drive and asked Larson to give him the car keys. Appellant told Larson that he was going to take the car and leave but that he would come back and get Larson to take him home. Larson did not see appellant after appellant left. The disc jockey at the club took Larson home. As the disc jockey and Larson were passing the dealership on Burnet Road, Larson saw his car and several police cars, but they did not stop. Curtis testified that based on her investigation there was nothing, except what appellant said, to show that Larson was at the car dealership the night of the burglary.

The manager of the car dealership testified that the Larsons were far behind in their payments on the car and that it had been repossessed after the burglary. The manager testified that nothing had been taken when the dealership=s building was burglarized. A young woman who knew appellant and Larson testified that Scott Larson was not in the Dallas Night Club when it closed on the night of the burglary.

A City of Austin chemist testified that the packet found in appellant=s pocket contained .49 grams of cocaine and the packets found concealed in the bag in the car contained 6.51 grams of cocaine.

The jury is the exclusive judge of the facts. *See* Tex. Code of Crim. Proc. Ann. art. 36.13 (West 1981). The jury hearing the evidence in this case resolved any conflicts in the evidence presented. To convict appellant of the offense charged, the State was required to show that: (1) appellant exercised actual care, control, or custody of cocaine, (2) appellant was conscious of his connection with the cocaine, and (3) appellant possessed the cocaine knowingly or intentionally. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The evidence may be direct or circumstantial. *Id*. If the contraband was not found on the person of the defendant or it was not in his exclusive possession, additional facts must link the defendant to the contraband. *See id*.

Among the links supporting the jury=s finding that appellant possessed the cocaine with the intent to deliver are: (1) appellant said he had been driving the car in which the cocaine was found; (2) appellant was the only person present and was apparently in sole possession of that car at the time; (3) the cocaine found in the car was readily accessible; (4) the packets of cocaine found in the car were packaged in the same way as the packet of cocaine found in appellant=s pocket; (5) all the packets of cocaine were

**7**

packaged in the same manner as cocaine is usually sold and delivered; (6) appellant admitted that he had intended to deliver the packet of cocaine found in his pocket; (7) appellant=s checkbooks and other personal belongings were found in the car; (8) appellant told the officers where to locate other cocaine in the car that they had not found when they first searched the car.

The direct and circumstantial evidence when viewed in the light most favorable to the prosecution supports a rational finding that the essential elements of the charged offense were proved beyond a reasonable doubt. The verdict of the jury, the finder of fact, is supported by legally sufficient evidence. After examining all of the evidence impartially and giving deference to the jury=s verdict, we conclude that the jury=s verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Moreover, from our neutral review of all of the evidence both for and against the jury=s verdict, we find it fails to show that the proof of appellant=s guilt is so obviously weak as to undermine confidence in the jury=s determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by the contrary proof. The evidence is factually sufficient to support the jury=s verdict. Appellant=s first point of error is overruled.

In his second point of error, appellant complains that, over his objection, the trial court erred by submitting to the jury a charge on the law of parties and on the law of joint possession. Appellant argues that the charge on the law of parties was given without sufficient legal evidence to warrant it. This point of error was not properly preserved for appellate review because appellant=s trial objection was insufficient. Before the court=s charge is submitted to the jury, a defendant or his counsel shall dictate into the record, or present in writing, any objections to the charge distinctly specifying each ground of objection. *See* Tex. Code of Crim. Proc. Ann. art. 36.14 (West Supp. 2002). This article requires strict compliance; the purpose of the article is to enable the trial court to know in what respect the defendant regards the charge as defective and to afford the court the opportunity to correct the charge. *See Brown v. State*, 716 S.W.2d 939, 942-43 (Tex. Crim. App. 1986); *Seeturth v. State*, 422 S.W.2d 931, 936 (Tex. Crim. App. 1967). A general objection that merely states the evidence is insufficient to support the submission of a parties charge is not specific enough to advise the trial court in what respect the defendant regards the charge as defective and to afford the court an opportunity to correct the charge. *See Reyes v. State*, 910 S.W.2d 585, 592-93 (Tex. App.CAmarillo 1995, pet. ref=d); *see also Brown*, 716 S.W.2d at 942-43. Here, appellant=s trial objection was, AWe would also object to the parties charge as it stands in paragraph 4 of the charge.@ This objection did not comply with the strict requirement of article 36.14 of the Code of Criminal Procedure. Moreover, evidence in the record does support the submission of the charge on the law of parties. *See* Tex. Pen. Code Ann. ' 7.01 (West 1994); *Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996); *McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Crim. App. 1974).

**9**

Appellant also complains of the trial court=s jury charge that Apossession need not be exclusive, but may be joint with another or others.@ Possession of contraband need not be exclusive to support a conviction of the unlawful possession of a controlled substance; evidence showing an accused jointly possessed contraband with another is sufficient. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). The evidence in this case justified the charge on joint possession. Moreover, appellant objected Ato the joint possession charge as located in paragraph 2 of the charge@; this objection was not specific enough to preserve the claimed error for appellate review. Appellant=s trial objections were insufficient to preserve for appellate review the error claimed on appeal. However, we note that in view of the evidence which we have summarized, the trial court did not err in allowing the jury to consider the law of parties and of joint possession. Appellant=s second point of error is overruled.

Appellant has combined for argument his third and fourth points of error in which he asserts that Aweapons found at the scene of the arrest@ and Aphotographs of stolen property found at the scene@ were evidence of extraneous offenses and were erroneously admitted in evidence. Both officers Burns and Drake testified without objection about the two handguns they found in the car appellant had been driving. The handguns were not offered or admitted in evidence. State=s Exhibit 35, a photograph of these weapons, was admitted in evidence. Appellant also complains that State=s Exhibits 31 and 34 are photographs of stolen property that were admitted over his objections. When State=s Exhibit 35, 34 and 31, along with other photographs, were offered in evidence, defense counsel was allowed to voir dire the witness. After counsel questioned the witness about these photographs, counsel objected, AI don=t believe the proper predicate has been laid with regard to State=s Exhibits 30, 31, 35, 36, 37, 38, and 39.@ Counsel made no objection to State=s Exhibit 34. The trial court overruled the objection and admitted in evidence State=s Exhibits 31 through 40. At the time these exhibits were admitted, there was no objection that they were evidence of inadmissible extraneous offenses. Because appellant=s trial objection does not correspond with the issues raised on appeal, we hold that appellant has not preserved anything for appellate review. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Hitt v. State*, 53 S.W.3d 697, 708 (Tex. App.CAustin 2001, no pet.); *Roise v. State*, 7 S.W.3d 225, 245 (Tex. App.CAustin 1999, pet. ref=d). Appellant=s third and fourth points of error are overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Justices Kidd, Puryear and Dally[*]

Affirmed

Filed:   September 26, 2002

Do Not Publish

*    Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).